She was found guilty after pleading guilty to endangering the life of her health, a child, eight counts of obstructing justice, and two counts of conspiracy to obstruct justice. All of these convictions and her guilty plea resulted from her actions in relation to the death of her son, Joseph, at the hands of Scott Endicott, her paramour at the time. Endicott eventually pled guilty to first degree murder and was sentenced to 60 years imprisonment, and that case is currently before this court. The factual basis of the guilty plea for Ms. Schoolfield annually demonstrates that she was under border protection to keep Joseph away from Scott Endicott, that she ignored that order, that Scott Endicott abused the child, abused Joseph, and that abuse resulted in his death, and that later on Ms. Schoolfield did lie to various medical people and people in law enforcement about how those injuries occurred. That's undisputed about what those actions are. We are coming before this court arguing that the 16 year sentence imposed upon her after her sentencing period is an abuse of discretion either because consecutive sentences are not necessary to protect the public or simply because May I ask you something? I read in the brief, and I don't know if it will be in the record, that statement that she was currently pregnant. She was pregnant at the time. She was pregnant by Scott Endicott. Yes. And the sentence is excessive and should be reduced in some way. We also argue in the brief that the cause has to be remanded for strict compliance under Illinois Supreme Court Rule 604D, and I'll briefly touch upon that issue first and then move on to the excessive sentence argument. It's well known that strict compliance with 604D is required under Illinois Supreme Court decisions in People v. Wilt and James where no strict compliance is had, remand is required. And the point that we're pointing to is that, the language we're pointing to is that counsel, quote, consulted with Ms. Schoolfield to ascertain her contentions concerning the motion to reduce her sentence. We believe that that does not show strict compliance under Rule 604D. And it's kind of analogous to similar cases where this Court has said that language, that deprivation of constitutional rights is not strict compliance. When somebody puts in a 604D certificate that he has consulted with deprivation, with a view of looking at the deprivation of constitutional rights, that's not the same as looking for contention to bear in a sentencing. The latest case out of this Court is People v. Curtis Richard, decided May 7, 2002 of this year. If there are no questions, I'll move on to the excessive sentence contention. Sixteen years in total was imposed upon her. Ten years for endangering the life or health of a child. Three years for obstructing justice consecutive. And then further three years on the conspiracy counts for those counts. Making a total of 16 years in consecutive sentencing. Under Section 584C1 of the Unified Code of Corrections, consecutive sentences should only be imposed when such sentencing is necessary to protect the public. I believe that this is an example in which consecutive sentencing is not necessary to protect the public. Ms. Schoolfield had no history of prior criminal activity. All of her criminal activity was focused around Scott Hennigan. Can the Court also consider the serious nature of the crime? I'm sorry, Your Honor. The Court can also consider the serious nature of the crime? Right, Your Honor. And I don't know how you can say that knowingly and voluntarily putting her child in harm's way with the actual order to keep him away from her boyfriend and then covering up the death could not be an egregious, not just a lapse of judgment, but here an egregious series of crimes. There is no doubt that we do not want this to occur. There is no doubt that there is seriousness in this. I'm not disputing that. The natural inclination to be horrified by the brutal death of Joseph in this case. No child should suffer that. Which would have never come about if she had followed the Court's order and kept him away from her. If she had been more rational and had not been, as sometimes happens with women in our society, blinded by her love, infatuation, relationship with her girl. Well, here I think it went beyond that and actually evidenced a lack of empathy even for the life of her child. I'm not sure whether she lacked empathy or had become so abused by Scott and God that she did not recognize what she was doing. There is that problem in terms of the relationships between women and their new boyfriends. There was testimony in the sentencing hearings that fully demonstrated that she was a loving mother to Joseph right up until the time that Joseph's mother, Endicott, came into her life. And that then certain things started to occur. And there is no doubt that she minimized his activity and thought that something else was occurring. That she took Joseph to the doctor on several occasions trying to find that there was some kind of disorder with him. Because she was concerned about Beruza's honor, Joseph. But that she could not bring herself to believe that Scott Endicott was doing that. Well, the child himself told others that Endicott had hurt him. I'm sorry. The child himself had told others that Endicott had hurt him. Told others that Scott Endicott had hurt him. Well, what makes you think that her current child was Scott Endicott? According to your view of her, I guess, mental state would be in any different situation. Her current, her child, she has lost her rights with that child. And that child is not going to be around. Scott Endicott is not going to be around. Well, we don't know that. That's not in the record. But you were talking about there was no way to be concerned about protection of loved ones. I believe that pretty well shows the direction that that was going on. But one of the key concepts, I believe, is that when you look at the recidivism rate for people who commit homicide, that is very low. And this is pretty much a step down from that. But the similar, she has been convicted of not taking care of her child, in which a death resulted. The Bureau of Justice Department statistics shows that the recidivism rate for homicide is like 1, less than 1 percent after release in three years. The future danger of people who commit homicide is pretty much low, unless they're armed robbers, unless they're serial killers. But those are very few above people who are convicted of just homicide. And thus she is being released after a significant period of time in which she has time to really understand what those actions caused and how she is going to be rehabilitated. And that's the most important thing in this case, the rehabilitation incident. Consequently, we would urge your honors to reduce the sentence. Thank you. Thank you, Mr. Roberts. Is this turned into a cold seat? You probably did better the first time. Yeah, both times. Anything I say is right. Yes. Good morning, your honors. May it please the court. Your honor, you were exactly right regarding the excessive sentence issue in this case. The seriousness of the offense is the most important sentencing factor. And there's really no words to describe how serious this crime was. It was a terrible, terrible crime. This defendant allowed Scott Endicott to essentially parent her child while she went to work, knowing, one, that this man beat her child. Emergency personnel, medical personnel, family personnel had informed her that this was happening. As you said, your honor, the child himself informed them that Scott was doing this. Nevertheless, she still allowed Scott to babysit the child, essentially parent the child all by himself. And she also knew that, two, of course, that there was an order of protection prohibiting her from allowing contact between Joseph and Scott Endicott. And she still disobeyed the court's order, all the advice from all the personnel that her child was being abused, and she still allowed it to happen anyway. Lo and behold, the night that the incident occurred, she even texted Scott Endicott while she was at work, specifically saying that her requesting to Scott that her son not be hurt, and the trial judge below, the sentencing judge, thought that was appropriately appalling. The fact that you would even have to text somebody this particular request is absurd. And then later on, after a bunch of phone calls and more texts, it was apparent on the record that Joseph had clearly been hurt at that point, and the defendant proceeded to still attempt to protect Scott Endicott and to the detriment of her own child. She sent text messages to Scott to make the bottom bunk of the bed, to make it look like Joseph was sleeping on the top bunk and fell from the top bunk. She texted Scott to make it look like he didn't live there, because of course he wasn't supposed to live there. There was an order of protection. She said, hide your shoes, hide your clothes, move your car, all these other things. She was clearly not thinking in even the minimal sense for the security of her child. And further, there were more texts about, you know, we need to stick together, her and Scott. Again, this is all blatant evidence that she cared more about her relationship with Scott and maybe her future child with Scott than she cared about her son, who was clearly seriously injured at this point. And then the defendant proceeded to compound her mistakes here. She started lying to the detective. She said that Joseph fell off the bunk bed, and she even said to the detective that she was home at the time. She found him unresponsive. That was revealed very quickly to be a lie. She lied to the nurse, the doctor, the social worker, telling all of them that he fell off the top bunk. These were the obstruction of justice counts, the conspiracy counts that she was convicted of, very serious, very appalling crimes. That was horrific behavior. But did the trial court articulate any reason for its finding that she had the potential to do harm again? Your Honor, the trial judge did mention, he did have a discussion on consecutive sentencing. I have the quote here. The trial judge said that counsel, quote, argues that, well, judge, I can't oppose consecutive sentences because there is no likelihood that she's going to commit more crimes. The judge continued, well, she kept committing crimes for a long period of time, days gone, days went by. End quote, he continues. I think the fact that the trial judge discussed consecutive sentencing is sufficient to support his order of imposing consecutive sentencing. As cases that I cite in my brief, Your Honor, cite that no specific language is needed in order to impose consecutive sentencing, but the record must show that his order of consecutive sentences was motivated by his belief that protection of the public required it. He clearly says in his statement that she kept committing crimes for a long time. I think this clearly reflects the judge's belief that this wasn't just one crime. This wasn't an isolated incident. This was something that happened months earlier, starting with the order of protection. She knew that these crimes were happening. She even moved in with Scott Endicott at this point. This was a months-long series of offenses. And then even when her son was injured severely to the point where he had to be taken to the hospital, she even compounded it. This wasn't a lapse of judgment or a single mistake. This was compounding it and compounding it. And the judge clearly, by the score, I think, indicates that, well, if she couldn't stop herself from committing crimes in this series of events, why would she stop in the future? This is about as serious as it gets. If she couldn't try and protect her child, what's preventing her from committing other, say, smaller offenses in the future? And I think that's what the judge was talking about, and I think that specific discussion where he mentioned consecutive sentences clearly indicates that that was his motivation. So the people who submit that respectfully request that this court affirm the trial of the sentencing judge's sentences in this case. And briefly, I'll point to the 604D certificate issue. There's only one part of the certificate that was at issue here. The rule, Rule 604D, states specifically that counsel must certify that the ascertained defendant's contentions bear in the sentence. In this case, counsel certified that he, quote, ascertained her contentions concerning the motion to reduce her sentence. And again, as I cite in my brief, the 604D certificate need not recite word for word the rule's verbiage. And we think that the people submit that the verbiage used by counsel here is sufficient because the people submit that discussing the errors in the, or the contentions concerning the motion to reduce sentence necessarily indicates that he's talking, he's consulting with his client about the errors in the sentence. I guess what else could they be talking about? Talking about the motion to reduce sentence. In that motion, it's all about the errors that she perceived, and that's what they were discussing. They're certainly not talking about things that the child sentencing did correct, in their opinion. Those wouldn't be in the motion. So the people would submit that the remand is unnecessary for 604D certification. That is all I have. If there are any other questions, I'd be happy to answer them. Thank you. Mr. Evers, do you have a rebuttal? Yes, Your Honor. The talk about an isolated incident, well, this is an isolated relationship, and her actions were all involved around Scott Hendicott and that relationship. And there's really no showing that she is not going to be able to learn from this and not become involved in such a type of relationship again. And the idea that she's going to be a danger to other people, that there's no showing in her life before this, except with Scott Hendicott, that she was a danger to anybody. Admittedly, she committed certain acts that were bad judgment, led to the death of her son, and she tried to help her paramour at the time evade the criminal prosecution. And that is what she's convicted of and what she was sentenced for. But the isolated relationship part, I think, is one of the key aspects of this, that you have to look at that she was in this abusive relationship with Scott Hendicott. And that in the sentencing hearing, the doctor, the psychologist, testified that she was being psychologically abused. Otherwise, if you have no other questions, Your Honor, I simply urge Your Honor to reduce the sentence. Thank you. Thank you, Mr. Evans. Thank you. Mr. Nicole Losey, for your briefs and arguments. We'll take the matter under advisement.